IN RE:     **AARON TONKEN**

| | |
|---|---|
| **DAVID SCHWIMMER,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   **ADVERSARY PROCEEDING** |
| | )   **Case No. LA 04-12883 EC** |
| **AARON TONKEN,** | )   **Chapter 7** |
| | )   **Adv. Proc. No. AD04-02488 EC** |
|     Defendant/Debtor. | ) |

## NONPARTY THOMAS NELSON, INC.'S MOTION TO QUASH SUBPOENA[1]

Pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure and Rule 9016 of the Federal Rules of Bankruptcy Procedure, nonparty Thomas Nelson, Inc. ("Nelson"), moves this Court to quash the Subpoena Duces Tecum that Plaintiff issued to Nelson in the context of the adversary proceeding pending in the United States Bankruptcy Court for the Central District of California, Case No. LA 04-12883 EC, Adv. Proc. No. AD04-02488 EC (the "Subpoena"). A true and correct copy of the Subpoena (and its attachments) is attached as Exhibit A to this Motion. The Subpoena seeks the production of irrelevant, privileged, proprietary and/or otherwise protected documents, and a corporate representative for deposition regarding the document production.

The information sought by the Subpoena is protected from production by Nelson, a nonparty to this litigation because: (1) the information sought is irrelevant to the instant litigation; (2) the reporter's privilege protects a number of the requested documents from

---

[1] At the direction of the Clerk of the Court, this Motion to Quash Subpoena and accompanying Memorandum of Law are being filed in paper rather than electronically. The electronic filing system would not accept this filing.

disclosure; (3) the attorney-client privilege protects a number of the requested documents from disclosure; (4) pretrial discovery into the financial condition of Nelson, a nonparty to the litigation, is improper; and (5) some of the information requested is confidential and proprietary and should not be disclosed. For these reasons, Nelson should not be required to produce such documents or a corporate representative for such a deposition proceeding.

In support of this Motion to Quash Subpoena, Nelson files contemporaneously herewith a Memorandum of Law.

Respectfully submitted,

Jay S. Bowen
Katharine R. Cloud
**BOWEN RILEY WARNOCK &**
**JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
Facsimile (615) 320-3737

*Attorneys for Thomas Nelson, Inc.*

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via U.S. Mail, first class, postage prepaid, to the following:

Sam A. Kozhaya
Liner Yankelevitz Sunshine & Regenstreif, LLP
14th Floor
1100 Glendon Avenue
Los Angeles, CA 90024

on this 30th day of December, 2004.

# United States Bankruptcy Court

_MIDDLE_ District Of _TENNESSEE_

In re: AARON TONKEN

**SUBPOENA IN**
**AN ADVERSARY PROCEEDING**

_____
Debtor

DAVID SCHWIMMER

_____
Plaintiff

Case No. [1] _LA 04-12883 EC_

AARON TONKEN

Chapter _7_

_____
Defendant

THOMAS NELSON, INCORPORATED

To:

Adv. Proc No : _AD04-02488 EC_

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| IKON Legal Document Services | January 10, 2005 |
| 414 Union Street, Suite 1916 | |
| Nashville, TN 37219 | 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment 1.

| PLACE | DATE AND TIME |
|---|---|
| IKON Legal Document Services | January 10, 2005 |
| 414 Union Street, Suite 1916 | |
| Nashville, TN 37219 | 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in adversary proceedings by Rule 7030, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | December 20, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Sam A. Kozbaya, Liner Yankelevitz Sunshine &
Regenstreif LLP, 1130 Glendon Ave., 14th Fl., Los
Angeles, CA. 90024, (310) 500-3500

[1] If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

**EXHIBIT A**

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Fed. R. Civ. P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed. R. Bankr. P

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except

that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# ATTACHMENT "1"

## DEFINITION OF TERMS

Words in CAPITALS in this Document Request are specifically defined as follows:

(a)     YOU OR ANYONE ACTING ON YOUR BEHALF includes the Responding Party, YOUR agents, YOUR employees, YOUR insurance companies, their agents, their employees, YOUR accountants, YOUR investigators, and anyone else acting on YOUR behalf, including, without limitation, WND Books, Nelson Current, Nelson Publishers, and Thomas Nelson, Inc., all parents, subsidiaries, divisions, affiliates, and/or related entities.

(b)     "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, public entity, or any other entity.

(c)     "DOCUMENT(S)" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("E-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, cancelled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

(d)     IDENTIFY means stating the name, title, address, and telephone number of any PERSON identified and the location of any DOCUMENT identified.

(e)     The terms "or" and "and" shall be read in the conjunctive and in the disjunctive where ever they appear, and neither of these words shall be interpreted to limit the scope of a request for information.

(f)     The terms "relate to", "relates to", "relating to" and "related to" shall mean and include: refer, reflect, discuss, show, constitute or be in any way logically or factually connected with the matter discussed.

0071186/001/ 338053v02

1    (g)    Wherever the context requires, the singular shall include the plural, the plural the singular,

2    and all words their conjugate forms, unless the Demand for Production specifies to the contrary.  Wherever

3    used, references to the masculine, feminine, or neither gender shall include the neuter, feminine and

4    masculine genders, as the context requires.

5    (h)    The term "TONKEN" as used herein shall mean Defendant Aaron Tonken and his agents,

6    employees, representatives, attorneys and any other PERSON acting on his behalf.

7    (i)    The term "SCHWIMMER" as used herein shall mean Plaintiff David Schwimmer and his

8    agents, employees, representatives, attorneys and any other PERSON acting on his behalf.

9    (j)    The term "COMPLAINT" shall mean the Complaint filed in the United States Bankruptcy

10   Court, for the Central District of California, Los Angeles Division in the action entitled _Schwimmer v. Tonken_,

11   AD 04-02466-EC, and any amendments thereto.

12   (k)    The term "KING OF CONS" as used herein refers to the book written by TONKEN entitled

13   *"King of Cons: Exposing the Dirty, Rotten Secrets of the Washington Elite and Hollywood Celebrities"*.

14   (l)    The term "XIV KARATS" as used herein refers to the jewelry store named XIV Karats, Ltd.

15   located in Beverly Hill, California.

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## DOCUMENTS TO BE PRODUCED

1.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between YOU and TONKEN regarding SCHWIMMER and/or KING OF CONS.

2.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between YOU and any PERSON acting on behalf of TONKEN regarding SCHWIMMER and/or KING OF CONS.

3.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between YOU and any attorney representing TONKEN regarding SCHWIMMER and/or KING OF CONS.

4.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between WND Books and TONKEN regarding SCHWIMMER and/or KING OF CONS.

5.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between WND Books and any PERSON acting on behalf of TONKEN regarding SCHWIMMER and/or KING OF CONS.

6.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which evidence, refer or relate to any and all oral or written communications or meetings by and between WND Books and any attorney representing TONKEN regarding SCHWIMMER and/or KING OF CONS.

7.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which

3

00711964001/1340063-02

1  evidence, refer or relate to any and all oral or written communications or meetings by and between Nelson

2  Current and TONKEN regarding SCHWIMMER and/or KING OF CONS.

3  ~~8.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-~~

4  ~~mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which~~

5  ~~evidence, refer or relate to any and all oral or written communications or meetings by and between Nelson~~

6  ~~Current and any PERSON acting on behalf of TONKEN regarding SCHWIMMER and/or KING OF CONS.~~

7        9      All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

8  mail), tape recordings, diaries, schedules, telephone call records, telephone bills and telephone logs which

9  evidence, refer or relate to any and all oral or written communications or meetings by and between Nelson

10  Current and any attorney representing TONKEN regarding SCHWIMMER and/or KING OF CONS.

11       10.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

12  mail), agreements and draft agreements which evidence, refer or relate to the negotiation of any and all

13  agreements regarding the publication of KING OF CONS.

14       11.    Any and all agreements and draft agreements regarding the publication of KING OF CONS.

15       12.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

16  mail), agreements and draft agreements which evidence, refer or relate to the negotiation of the acquisition of

17  rights to produce a motion picture and/or television movie based on KING OF CONS.

18       13      Any and all agreements and draft agreements regarding the acquisition of rights to produce a

19  motion picture and/or television movie based on KING OF CONS.

20       14.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

21  mail), agreements and draft agreements which evidence, refer or relate to any and all instructions YOU have

22  been given regarding the payment of any monies derived from the sale of KING OF CONS.

23       15.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

24  mail), invoices, receipts, summaries, bank statements, ledgers, checks, agreements and draft agreements

25  which evidence, refer or relate to YOUR payment of any monies derived from the sale of KING OF CONS to

26  TONKEN.

27       16.    All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-

28  mail), invoices, receipts, summaries, bank statements, ledgers, checks, agreements and draft agreements

4

00711B6001/234063v01



1 which evidence, refer or relate to YOUR payment of any monies derived from the sale of KING OF CONS to
2 any PERSON acting on behalf of TONKEN.
3     17. All DOCUMENTS, including without limitation, all notes, memos, letters, electronic mail (e-
4 mail), invoices, receipts, summaries, bank statements, ledgers, checks, agreements and draft agreements
5 which evidence, refer or relate to YOUR payment of any monies derived from the sale of KING OF CONS to
6 any attorney representing TONKEN.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

00711R6/001/235063v02

# DECLARATION OF CUSTODIAN OF RECORDS

I, _____, declare as follows:

1.     I am the duly authorized Custodian of Records for Thomas Nelson, Incorporated ("Thomas Nelson") and have authority to certify and authenticate the records of Thomas Nelson relating to the subpoena of David Schwimmer, served in connection with Tonken v. Schwimmer, United States Bankruptcy Court for the Central District of California, Bankruptcy Number LA 04-12883-EC and Adversary Number 04-02488-EC ("the Subpoena").

2.     I have received a copy of the Subpoena in the above-reference case.

3.     I have made a thorough and good faith search for the records described by the Subpoena as they are retained in the normal course of business, including a diligent search for electronic files and/or documents which might be responsive. To the best of my knowledge, information and belief, the accompanying documents, Bates numbered _____, are the documents responsive to the Subpoena in Thomas Nelson's possession, custody or control. Each of these records was prepared and/or maintained by personnel of Thomas Nelson in the ordinary course of business at or near the time of the act, condition or events.

4.     The accompanying documents are true and correct copies of the responsive records referenced in paragraph 3. I placed the documents in a sealed envelope and caused them to be sent to the law firm of Liner Yankelevitz Sunshine & Regenstreif LLP, c/o Sam A. Kozhaya, via _____.

I declare under penalty of perjury under the laws of the State of Tennessee that the foregoing is true and correct.

Executed on this _____ day of _____, _____, at Nashville, Tennessee.


_____
CUSTODIAN OF RECORDS
Thomas Nelson, Incorporated

1

0071185/001/ 238132v01

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:    **AARON TONKEN**

| | |
|---|---|
| **DAVID SCHWIMMER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **ADVERSARY PROCEEDING** |
| | ) **Case No. LA 04-12883 EC** |
| **AARON TONKEN,** | ) **Chapter 7** |
| | ) **Adv. Proc. No. AD04-02488 EC** |
| **Debtor/Defendant.** | ) |

## MEMORANDUM OF LAW IN SUPPORT OF NONPARTY THOMAS NELSON, INC.'S MOTION TO QUASH SUBPOENA

### I.    Introduction

Pursuant to Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") and Rule 9016 of the Federal Rules of Bankruptcy Procedure ("Rule 9016"), nonparty Thomas Nelson, Inc. ("Nelson"), has moved this Court to quash a subpoena duces tecum issued to Nelson pursuant to the authority of this Court (the "Subpoena"). The Subpoena, requested by Plaintiff David Schwimmer ("Schwimmer") and served on Nelson, seeks (1) the production of irrelevant, privileged, proprietary and/or otherwise protected documents, and (2) a corporate representative for deposition regarding the document production. Nelson is not required to produce the information sought in the Subpoena, and the Subpoena should be quashed.

On September 14, 2004, Schwimmer initiated an adversary proceeding against Debtor/Defendant Aaron Tonken ("Tonken") in Tonken's Chapter 7 bankruptcy proceeding before the United States Bankruptcy Court for the Central District of

California, Case No. LA 04-12883 EC, Adv. Proc. No. AD04-02488 EC, alleging that Tonken, a philanthropist, charitable events organizer and occasional book author, defamed Schwimmer.

Nelson recently published a book written by Tonken entitled, *King of Cons: Exposing the Dirty, Rotten Secrets of the Washington Elite and Hollywood Celebrities* (*"King of Cons"*). None of the alleged defamatory statements upon which Schwimmer bases his defamation case against Tonken, however, were made in *King of Cons*. To the contrary, the statements upon which Schwimmer relies to allege that he has been defamed by Tonken are statements contained in articles published in the *Los Angeles Times* newspaper (*"L.A. Times"*) on December 8 and 10, 2003, respectively. Nelson did not publish the statements that are the subject of Schwimmer's adversary proceeding, and, in fact, Schwimmer does not allege that Nelson did so. Schwimmer alleges instead:

- "[Tonken] vindictively peddled lies about Schwimmer for his own financial gain and out of spite, including lies about Schwimmer which [Tonken] told to the media, such as those published in the [*L.A. Times*] . . . ." (Adv. Proc. Compl, attached as Exhibit 1 to this Memorandum of Law, at ¶ 7).

- "[Tonken] orally made the Statements to third parties, including without limitation reporters with the [*L.A. Times*], willfully and maliciously, and knowing and intending that the Statements would be published and disseminated to the media, which articles were in fact published in the [*L.A. Times*] on December 8 and 10, 2003 . . . ." (*Id.* at ¶ 16).

- "[Tonken] maliciously, willfully, without justification, and without privilege, made the Statements for the purpose of publication in, among other publications, the *L.A. Times* articles, in order to garner attention for a 'tell-all' book, [*King of Cons*] . . . ." (*Id.* at ¶ 17).

2

Indeed, Schwimmer's Complaint fails to contain a single allegation that any of the purportedly defamatory statements Tonken made about him were published in *King of Cons*. (*See generally* Exhibit 1).

Despite Nelson's lack of involvement in the facts or allegations underlying Schwimmer's adversary proceeding against Tonken, Schwimmer served Nelson with the Subpoena, seeking an extensive array of irrelevant, confidential, proprietary, privileged and otherwise protected documents,[1] in addition to the deposition of Nelson's corporate representative.[2] Pursuant to Rule 45 and Rule 9016, Nelson objects to Schwimmer's Subpoena and asks the Court to quash it in its entirety.

## II. Standard of Review for a Motion to Quash

Rule 45 provides for the "protection of persons subject to subpoenas." *Id.* Specifically,

> [o]n timely motion, the court by which a subpoena was issued shall quash .
> . . the subpoena if it . . . requires the disclosure of privileged or other
> protected matter; . . . subjects a person to undue burden; . . . [or] requires
> disclosure of a trade secret or other confidential research, development or
> commercial information . . . .

*Id.* at (c)(3)(A)-(B).

---

[1]     Nelson attached a copy of the Subpoena as Exhibit A to the Motion to Quash Subpoena, filed contemporaneously with this Memorandum of Law.

[2]     By letter accompanying service of the Subpoena on December 20, 2004, Schwimmer's counsel advised Nelson's counsel that, if Nelson's production of documents in response to the Subpoena is deemed sufficient, then Schwimmer will forego the deposition of Nelson's corporate representative. (*See* Letter from Sam A. Kozhaya to Custodian of Records, Thomas Nelson, Inc., dated December 20, 2004) (attached as Exhibit 2 to this Memorandum of Law).

Here, by timely motion,[3] Nelson seeks to have the Court enter an Order quashing the Subpoena because the documents sought by Schwimmer are subject to the reporter's privilege or the attorney-client privilege, constitute confidential financial or proprietary matters and/or would be unduly burdensome to produce by a nonparty to the adversary proceeding. Pursuant to Rule 45, the Court should quash the Subpoena in its entirety.

## III. Argument

### A. The Information Sought By The Subpoena Is Irrelevant.

As a threshold matter, Schwimmer seeks information from Nelson through the Subpoena that exceeds the scope of discoverable information under Rule 26 of the Federal Rules of Civil Procedure ("Rule 26"). The information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[4]

Schwimmer bases his defamation case against Tonken on statements that Tonken purportedly made and which were published in the *L.A. Times*. (*See* Compl., attached as Exhibit 1, at ¶¶ 7, 16). Schwimmer alleges that Tonken falsely accused Schwimmer of

---

[3] Schwimmer served Nelson with the Subpoena on December 20, 2004. Rule 45 states that objections to a Subpoena must be made within 14 days after service. Accordingly, Nelson had to file this Motion to Quash Subpoena no later than January 3, 2005. Fed. R. Civ. P. 45. This Motion is timely.

[4] Rule 26, incorporated into the Federal Rules of Bankruptcy Procedure through Rule 7026, provides that the scope of discovery, even among parties, is not limitless. Discovery is limited to only that information which is relevant or reasonably calculated to lead to the discovery of admissible evidence, not cumulative or duplicative, not obtainable from a more convenient, less burdensome or less expensive source and not unduly burdensome to produce given the "needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)-(2).

4

taking part in a certain charitable event organized by, among others, Tonken, and demanding expensive jewelry from Tonken to participate in and promote the event. (*Id.* at ¶¶ 7-8, 16). Schwimmer claims that Tonken's purported statements, which were published in the *L.A. Times*, damaged Schwimmer's reputation in the community by portraying Schwimmer as a "cold-hearted opportunist stealing from charities for his own personal gain." (*Id.* at ¶¶ 16-21, 28-33).

Nelson neither made nor published any of the alleged defamatory statements at issue in this adversary proceeding. In fact, Schwimmer's only references to Tonken's book, *King of Cons*, which was published by Nelson and serves as Nelson's *only* connection to this matter, are that (1) Tonken made the purportedly defamatory statements to "garner attention" for the book, (*id.* at ¶ 17), and (2) Tonken arranged to receive advances from Nelson for writing the book after filing for bankruptcy in an effort to "keep such monies from his pre-petition creditors" (*id.* at ¶¶ 50, 55). Neither reference goes to the heart of any of the issues raised by Schwimmer's Complaint.

Moreover, the documents Schwimmer seeks to have Nelson produce pursuant to the Subpoena are not relevant or reasonably calculated to lead to the discovery of admissible evidence related to even these tangential connections that Nelson may have to this adversary proceeding. For example, the Subpoena requests, among other documents:

- "All DOCUMENTS . . . which evidence, refer or relate to any and all oral or written communications or meetings by and between [Nelson] and [Tonken] regarding SCHWIMMER and/or KING OF CONS." (Subpoena, attached as Exhibit 1 to the Motion, at No. 1).[5]

---

[5]    Schwimmer also seeks such documents from WND Books and Nelson Current, two of Nelson's publishing divisions. (*See* Subpoena at Nos. 4 and 7).

- "All DOCUMENTS . . . which evidence, refer or relate to any and all oral or written communications or meetings by and between [Nelson] and any PERSON acting on behalf of [Tonken] regarding SCHWIMMER and/or KING OF CONS." (*Id.* at No. 2).[6]

- "All DOCUMENTS . . . which evidence, refer or relate to any and all oral or written communications or meetings by and between [Nelson] and any attorney representing [Tonken] regarding SCHWIMMER and/or KING OF CONS." (*Id.* at No. 3).[7]

- "All DOCUMENTS . . . which evidence, refer or relate to . . . agreements regarding the publication of KING OF CONS, (*id.* at No. 10), the acquisition of rights to produce a motion picture and/or television movie based on the KING OF CONS, (*id.* at Nos. 12 and 13) and the payment of any monies derived from the sale of the KING OF CONS, (*id.* at Nos. 14-17).

Absolutely none of the documents responsive to this Subpoena relate to the statements Schwimmer claims defamed him, Tonken's purported attempts to "garner attention" for *King of Cons* prior to publication and sale of the book, or the timing of Tonken's filing for bankruptcy. Rather, Schwimmer's Subpoena is nothing more than a "fishing expedition," designed to obtain nonparty Nelson's confidential, proprietary and otherwise privileged materials, most of which is irrelevant to Schwimmer, and all of which is irrelevant to Schwimmer's adversary proceeding against Tonken.

Interestingly, because Schwimmer is the only plaintiff in this adversary proceeding, and none of the other celebrities or public figures named in Tonken's book have joined in this lawsuit, the Subpoena is also overbroad from the standpoint that it

---

[6]      Schwimmer also seeks such documents from WND Books and Nelson Current. (*See* Subpoena at Nos. 5 and 8).

[7]      Schwimmer also seeks such documents from WND Books and Nelson Current. (*See* Subpoena at Nos. 6 and 9).

seeks "all documents" related to the inspiration, research, development, writing and publication of *King of Cons*. Schwimmer clearly is not entitled to that information, which implicates the privileges, confidences and rights to privacy of many other people and entities discussed in *King of Cons* besides Schwimmer.

## B. The Reporter's Privilege Protects The Documents Sought from Disclosure.

Document Request Nos. 1-9 of the Subpoena seek the disclosure of information that not only is irrelevant to Schwimmer's claim of defamation or Nelson's limited connection to this adversary proceeding, but also is protected from disclosure by the reporter's privilege. The reporter's privilege protects information gathered or discovered by a reporter in the context of reporting news to the public. The privilege extends to news media and "every sort of publication which affords a vehicle of information and opinion." *See Lovell v. City of Griffin*, 303 U.S. 444 (1938) (holding, in a freedom of the press case, that liberty of the press is not confined to traditional newspapers and periodicals). Accordingly, under *Lovell*, a book that provides commentary and opinion regarding public figures would be considered "press," entitled to the same freedoms and protections afforded to more traditional press, like newspapers and television broadcasts. *King of Cons* is just such a book. Accordingly, the book's author, Tonken, and its publisher, Nelson, are to be afforded the privileges bestowed upon the press under the United States Constitution and the statutory and common laws flowing from it.

The Supreme Court of the United States recognizes that the First Amendment to the United States Constitution creates a reporter's privilege. *Branzburg v. Hayes*, 408 U.S. 665 (1972); *see also In re Roche*, 448 U.S. 1312, 1315-16 (1980) (finding that

7

appropriate grounds may exist under the First Amendment for a reporter to resist responding to a subpoena).[8] In his concurring opinion in *Branzburg*, Justice Powell adopted a balancing approach to the question of whether a reporter should have to divulge information about confidential sources;[9] on a case-by-case basis, the constitutional interest in a free press should be weighed against the societal interest in obtaining relevant evidence. *Id.* at 710; *see also International Union v. Garner*, 102 F.R.D. 108 (M.D. Tenn. 1984) (explaining *Branzburg* in the context of a case regarding the disclosure of certain trial proceedings). Despite its recognition of the reporter's privilege, however, the Supreme Court largely left the contours of the reporter's privilege to the state courts and legislatures to define. In California and Tennessee, the courts and legislatures have instituted clearly defined protections for news reporters.

---

[8]    Although, "[t]here is no constitutional inhibition to the abrogation of privileges arising under state law when a matter is heard before a federal tribunal," *Farley v. Farley*, 952 F. Supp. 1232, 1235 (M.D. Tenn. 1997), the Federal Rules of Civil Procedure encourage federal judges to apply state privileges when the cause of action is grounded in state law, *id.* at 1236. This adversary proceeding is between two California residents. Nelson is a corporation residing in Tennessee. Schwimmer's defamation claim is grounded in California law, and is brought in a federal forum only because it is an adversary proceeding in a Chapter 7 bankruptcy, which necessarily is a federal matter. Regardless, the reporter's privilege is recognized as a privilege under federal common law, as well as the laws of California and Tennessee. Moreover, the laws of all three fora arguably are applicable here.

[9]    The reporter's privilege extends beyond "confidential" sources or materials and encompasses all materials assembled or learned by a reporter in the context of investigating a news story. Cal. Const., Art. 1, § 2(b); Cal. Evid. Code § 1070; *Miller v. Superior Court*, 986 P.2d 170 (Cal. 1999); *Austin v. Memphis Publ. Co.*, 655 S.W.2d 146 (Tenn. 1983).

California law, which will control the underlying defamation case between Schwimmer and Tonken, both California residents in a dispute regarding the publication of statements by the *L.A. Times*, a California newspaper, fine-tunes the balancing test articulated in *Branzburg*. In *Mitchell v. Superior Court*, 690 P.2d 625, 632 (Cal. 1984), the Supreme Court of California held:

> [I]n a civil action a reporter, editor, or publisher has a qualified privilege to withhold disclosure of the identity of confidential sources and of unpublished information supplied by such sources. The scope of that privilege in each particular case will depend upon the consideration and weighing of a number of interrelated factors.

*Id.; accord Rancho Publics. v. Superior Court*, 68 Cal. App. 4th 1538, 1550 (Cal. Ct. App. 1999). Those factors are: (1) the nature of the litigation and whether the reporter or publisher is a party; (2) the relevance of the information sought to plaintiff's cause of action; (3) whether plaintiff has exhausted alternative sources of the needed information;[10] (4) the importance of protecting confidentiality; and (5) whether plaintiff has made a *prima facie* showing that he can state a claim for defamation. *Mitchell*, 690 P.2d at 632-34.

Application of the *Mitchell* factors here supports quashing the Subpoena. Nelson is a nonparty to the adversary proceeding and has only a tangential connection to the facts underlying the defamation action. Because Schwimmer merely alleges that Tonken made the statements published in the *L.A. Times* to garner attention for *King of Cons*, and that Tonken timed his bankruptcy filing around the release of the book, the information

---

[10]     The *Mitchell* court notes that nearly all courts agree discovery from the reporter or publisher should be denied if the plaintiff has not exhausted alternative means of obtaining the same information. 690 P.2d at 634.

sought in Documents Request Nos. 1-9 of the Subpoena—all documents regarding the development, writing and publication of the book—is not relevant to Schwimmer's defamation action. Importantly, Schwimmer has not exhausted his efforts to obtain the information he seeks through the Subpoena from alternative sources—like Tonken himself. This ground alone should be sufficient under California law to quash the Subpoena. *Id.* at 634. Moreover, the importance of keeping confidential Nelson's documents regarding *King of Cons* is high, given the fact that the majority of the information relates to third parties, other celebrities and public figures, and not Schwimmer. Finally, Schwimmer has not made any effort, much less a successful one, to state a *prima facie* case of defamation against Tonken, such that discovery of privileged materials belonging to Tonken's book publisher should be disclosed.

Similarly, by Tennessee statute, the Court should quash the Subpoena. Section 24-1-208 of the Tennessee Code Annotated (the "Shield Law") states that a person or entity possessing information for publication or broadcast is not required to disclose that information, unless required to do so by a court order after a proper proceeding establishing grounds for such divestiture. Tenn. Code Ann. § 24-1-208.[11] Much like the factors considered in California's *Mitchell* case, the Shield Law requires an application from the person seeking the information, which demonstrates by clear and convincing evidence, that (1) the documents sought are relevant to a specific violation of the law; (2)

---

[11]     This protection is not limited to information received from confidential sources. *Austin v. Memphis Publ. Co.*, 655 S.W.2d 146 (Tenn. 1983).

the information cannot be obtained reasonably from alternative sources;[12] and (3) there exists a "compelling and overriding public interest" in the information. Tenn. Code Ann. § 24-1-208(c)(2)(A)-(C). Here, Schwimmer obviously has made no such application to this Court or any court for Nelson to divest itself of privileged information related to *King of Cons.* Furthermore, as established above, the documents sought are not relevant and should be obtained through alternative means—like from Debtor/Defendant Tonken. Under Tennessee law, the Subpoena should be quashed.

This case is analogous to *United States v. Hubbard*, 493 F. Supp. 202 (D.D.C. 1979), a criminal case regarding the Church of Scientology (the "Church"). In *Hubbard,* a reporter sought to quash a subpoena seeking all notes, writings and materials of any kind that the reporter had related to the Church. *Id.* The reporter had written a book proposal about the Church that contained detailed discussions of certain FBI searches of the Church in July 1977. *Id.* The reporter was present during the searches and related briefings. *Id.* After considering *Branzburg,* the district court quashed the subpoena, holding that "the reporter's privilege will be upheld unless the information sought is necessary to a just resolution of the case, and it cannot be obtained by alternative means." *Id.* at 205. The *Hubbard* court rejected the document seeker's argument that, because the

---

[12]     Tennessee federal courts have decided cases on this factor alone. For instance, in *Moore v. Domino's Pizza,* 199 F.R.D. 598 (W.D. Tenn. 2000), the district court denied defendant access to information gathered by a television news station because defendant made "no attempt to depose Plaintiffs in order to obtain the information in question . . . Furthermore, Defendant's contention that [the nonparty television station is] the only non-biased source of information is questionable." *Id.* at 600-01.

11

reporter was writing a book for personal financial gain, rather than an article for a newspaper, the analysis should be altered:

> First, the fact that news gathering is conducted for financial gain is irrelevant. Reporters normally receive salaries for their news gathering efforts. Such financial gain does not taint the importance of the services to our cherished first amendment goals. Second, the reporter's privilege must encompass all news gathering efforts, not simply those for newspapers.

*Id.* Like the reporter in *Hubbard*, Nelson, as the publisher of Tonken's newsworthy book, *King of Cons*, should not be required to produce all documents related to the publication of the book. The information Schwimmer seeks from Nelson is not necessary to his case. Furthermore, Schwimmer has not exhausted his alternative sources for these documents, including discovery from Debtor/Defendant Tonken.[13]

Simply put, Nelson, Tonken's book publisher, should not be forced to respond to the Subpoena, which seeks the production of documents clearly falling under the purview of the reporter's privilege as that privilege has been defined by the United States Constitution, federal common law, the law of California and the law of Tennessee. The Court should order that the Subpoena be quashed in its entirety.

---

[12]    For example, a series of simple interrogatories propounded on Tonken could establish the information, relevant to Schwimmer that Schwimmer seeks from Nelson through this Subpoena.

12

## C. The Attorney-Client Privilege Protects Many of the Documents Sought by the Subpoena.

Three of Schwimmer's Document Requests are aimed directly at documents protected from disclosure by the attorney-client privilege.[14]   Indeed, in Document Request Nos. 3, 6 and 9, Schwimmer seeks *all* documents related to communications or meetings between Nelson, WND Books or Nelson Current and Tonken's attorneys. (*See* Subpoena at Nos. 3, 6 and 9). In many cases, Nelson's attorneys have reviewed and analyzed these documents to advise Nelson regarding business matters. The attorney-client privilege, one of the oldest recognized privileges in federal or state court, should not be abrogated to require Nelson to produce documents reflecting confidential communications between Nelson and its attorneys related to various aspects of the publication of *King of Cons*, the vast majority of which are wholly unrelated to Schwimmer.[15] *See generally Wharton v. Calderon*, 127 F.3d 1201 (9th Cir. 1997); *In re Grand Jury Proceeding*, 886 F.2d 135 (6th Cir. 1989); Tenn. Code Ann. § 23-3-105; *Boyd v. Comdata Network, Inc.* 88 S.W.3d 203 (Tenn. Ct. App. 2002).

---

[14]    Of course, based on the overbreadth of Schwimmer's Subpoena, other Document Requests also encompass documents protected from disclosure by the attorney-client privilege.  Document Request Nos. 3, 6 and 9, however, expressly call for the production of such protected documents.

[15]    Indeed, because Schwimmer's Document Requests do not specify a timeframe, the work product doctrine also may protect some of the requested documents from disclosure. Since the time that Schwimmer began his inquiries into the publication of *King of Cons*, Nelson has communicated with its counsel about its possible involvement in Schwimmer's litigious activities. *See* Fed. R. Civ. P. 26(b)(3) (protecting documents "prepared in anticipation of litigation . . . .").

**D.  Pretrial Discovery of Nonparty Nelson's Financial Condition is Improper.**

Under both California and Tennessee law,[16] discovery of a nonparty's financial

condition or affairs, prior to at least a showing that a factual basis exists to award punitive

damages, unreasonably and improperly invades the nonparty's right of privacy.  Here,

Document Request Nos. 10-17 seek Nelson's financial information, to which Schwimmer

has failed to demonstrate that he has any entitlement at this preliminary juncture in the

discovery phase of the adversary proceeding.

Under California law, matters falling within the "zone of privacy" guaranteed by

the California Constitution, cannot be disclosed absent a compelling state interest. Cal.

Const., Art. 1, § 1; *Britt v. Superior Court,* 20 Cal.3d 844 (Cal. 1978); *Morales v.*

*Superior Court,* 99 Cal. App. 3d 283 (Cal. Ct. App. 1979). This protected zone of privacy

includes matters related to the financial affairs of an individual or entity. *Schnabel v.*

*Superior Court,* 5 Cal. 4th 704 (Cal. 1993); *Valley Bank of Nev. v. Superior Court,* 15 Cal.

3d 652 (Cal. 1975); *Fortunado v. Superior Court,* 114 Cal. App. 4th 475 (Cal. Ct. App.

2003).

Thus, on a case-by-case basis, California courts balance the interest in obtaining

information ascertaining the truth of a matter with the preservation of the important

privacy interests of the producing party. *See Save Open Space Santa Monica Mtns. v.*

*Superior Court,* 84 Cal. App. 4th 235 (Cal. Ct. App. 2001).  The California Legislature

codified this balancing test in Section 3295 of the California Code of Civil Practice

---

[16]     This Court should recognize privileges recognized under state law. *Farley,* 952 F.
Supp. at 1235-36.

("Section 3295"). Specifically, a plaintiff seeking to obtain information and documents regarding a defendant's financial status and assets, including any profits gained by virtue of the purportedly unlawful conduct at issue, must move the Court to order such production upon a *prima facie* showing that plaintiff can state a claim warranting an award of punitive damages. Cal. Code Civ. Prac. § 3295.

Similarly, in Tennessee, courts routinely have refused to allow a plaintiff unfettered access to a defendant's financial records absent a showing that a factual basis exists to award the plaintiff punitive damages. *Breault v. Friedli*, 610 S.W.2d 134 (Tenn. Ct. App. 1980) (adopting the balancing test articulated in California case, *Cobb v. Superior Court*, 99 Cal. App. 3d 543 (1980)); *Kibbler v. Richards Medical Co.*, No. 02A01-9110-CV-00214, 1992 Tenn. App. LEXIS 787, at *12-13 (Tenn. Ct. App. Sept. 23, 1992)(copy attached).

In the case at bar, Schwimmer has not filed a motion to obtain Nelson's financial records. Accordingly, the Subpoena seeks documents in violation of Section 3295. Additionally, Schwimmer has made no factual showing to this Court or any other court that he is entitled to an award of punitive damages in his adversary proceeding against Tonken.[17] Hence, Tennessee law also fails to provide support for his Subpoena.

---

[17]     At a minimum, Schwimmer must show that Tonken made a false and defamatory statement of and concerning Schwimmer and that such statement was made with actual malice, prior to punitive damages even becoming a consideration in his adversary proceeding. *Harte-Hanks Commn's, Inc. v. Connaughton* 491 U.S. 657, 666 (1989); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14-15 (1990) (citing *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)); *Cobb v. Time, Inc.*, 278 F.3d 629, 636 (6th Cir. 2002).

15

Moreover, Nelson is a nonparty to this case, only making Nelson's production of confidential financial records in response to this Subpoena more intrusive of Nelson's legitimate privacy interests. Nelson is not the target of the adversary proceeding. Nelson should not have to produce its financial records to assist Schwimmer in his pursuit of punitive damages from another person—Tonken. Schwimmer's pursuit of Nelson's financial records is, in short, premature, prior to any *prima facie* showing that Schwimmer is entitled to punitive damages in his lawsuit against Tonken.

**E.     Confidential and Proprietary Documents Should Not Be Disclosed.**

Additionally, Nelson should not have to produce documents responsive to the Subpoena's Document Request Nos. 10-17 because Nelson took affirmative steps to protect its proprietary information.     When Tonken and Nelson entered into their contractual relationship regarding *King of Cons*, the confidentiality of their association was specifically contemplated and addressed by Nelson. Nelson required Tonken to agree to maintain the confidentiality of Nelson's business matters revealed in the context of their business arrangement. The contract states:

> Other than as may be required by applicable law, government regulation or order, or by order or decree of any court of competent jurisdiction, [Tonken] shall not publicly divulge, announce, or disclose in any press release or any other manner to any third party, information or matters revealed to [Tonken] pursuant hereto, or any of the specific terms or conditions (including but not limited to royalty rates, advances, and net sales) of this Agreement. [Tonken] may publicly divulge information about the terms of the Agreement only if such information is approved in advance by Publisher.

Contract at ¶ 27.[18]

The Federal Rules of Civil Procedure do not define the terms "confidential research, development, or commercial information," which are used in Rule 45 to explain what types of information being sought will justify quashing a subpoena. Fed. R. Civ. P. 45. Courts have defined these terms, however, to encompass that information which, "if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *In re S3 LTD*, 242 B.R. 872, 876 (Bankr. E.D. Va. 1999) (quoting *Diamond St. Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994)); *accord Centurion Indus. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981); *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("Confidential commercial information warrants special protection . . . ."). Such injurious information need not be disclosed and is protected from disclosure by the courts through an order to quash any subpoena that seeks such information. *Id.*

Nelson took care at the beginning of its contractual relationship with Tonken to ensure that Tonken would not reveal competitive publishing information about Nelson to its competitors, the media or the public-at-large. That competitive information includes, among other things, royalty rates, advances, and net sales figures. In many instances, Schwimmer's Subpoena seeks the production of this exact information. (*See* Subpoena at Nos. 10-17). Nelson should not be required to divulge sensitive business information in

---

[18]    The contract is between Tonken's company, Shedding Positive Light, LLC, and WND Books, a division of Nelson, dated March 16, 2004. Absent a court order, Nelson does not intend to produce the contract in response to the Subpoena because the document and its terms are confidential.

response to the Subpoena to be used in a case between Schwimmer and Tonken. After all, Nelson is not even a party to this lawsuit. Nelson should not be injured competitively by a dispute to which it is not a party.

## IV. Conclusion

Schwimmer attempts to use the Subpoena as a vehicle to obtain information to which he is not entitled. The documents Schwimmer seeks are not discoverable by him for a variety of reasons. The documents do not meet the minimum relevancy standards under Rule 26 of the Federal Rules of Civil Procedure such that a party, much less a nonparty like Nelson, should be required to produce them. The requested documents are further protected from disclosure under the reporter's privilege, the attorney-client privilege and/or because the documents contain confidential proprietary and financial information that is not discoverable prior to a factual showing that punitive damages likely are due to Schwimmer. Nonparty Nelson should not be forced to produce privileged and confidential documents as a part of Schwimmer's fishing expedition in the adversary proceeding. The myriad of protections available to these documents and Nelson, coupled with the fact that Schwimmer seeks the documents from a nonparty when he has done little, if anything, to obtain these documents from alternative sources, indicates that the Court should quash the Subpoena in its entirety.

Respectfully submitted,

Jay S. Bowen
Katharine R. Cloud
**BOWEN RILEY WARNOCK &
JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
Facsimile (615) 320-3737

*Attorneys for Thomas Nelson, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via U.S. Mail, first class, postage prepaid, to the following:

Sam A. Kozhaya
Liner Yankelevitz Sunshine & Regenstreif, LLP
14th Floor
1100 Glendon Avenue
Los Angeles, CA 90024

on this 30th day of December, 2004.

19

**Please Conform and Return**

1  Leslie A. Cohen (SBN: 93698)
   Sam A. Kozhaya (SBN: 217265)
2  LINER YANKELEVITZ SUNSHINE & REGENSTRIEF LLP
   1100 Glendon Avenue, 14th Floor
3  Los Angeles, CA  90024-3503
   Telephone:   (310) 500-3500
4  Facsimile:   (310) 500-3501
5
   Martin D. Singer (SBN: 78166)
6  LAVELY & SINGER
   2049 Century Park East, Suite 2400
7  Los Angeles, California 90067
   Telephone:   (310) 556-3501
8  Facsimile:   (310) 556-3615
9
   Attorneys for Plaintiff, David Schwimmer
10

09/14/2004  **FILED**  15:42
LA04-12883EC
DEBTOR:
  TONKEN, AARON
JUDGE: HON. E. Carroll - 586
TRUSTEE:
CHAPTER: 07  AD04-02488

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF. ID: 747
RECEIPT NO: LA-029273  $150.00

11            UNITED STATES BANKRUPTCY COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                  LOS ANGELES DIVISION

14  In re AARON TONKEN,                    Bk. No.: LA 04-12883-EC

15            Debtor.                      Chapter 7

16

17                                         Adv. Case No.:

18  DAVID SCHWIMMER as an individual;      COMPLAINT FOR SLANDER; TO DETERMINE
                                           DISCHARGEABILITY OF DEBT; OBJECTION TO
19            Plaintiff,                    DISCHARGE

20        vs.                              [11 U.S.C. § 523(a)(6); 11 U.S.C. § 727(a)(4)(A);
                                           11 U.S.C. § 727(a)(4)(D); 11 U.S.C. § 727(a)(2);
21                                         11 U.S.C. § 727(a)(5)(A); Fed. R. Bankr. P. 4007
    AARON TONKEN, an individual            and 7001]
22
              Defendant.                   Status Conference:
23                                         Date:   [To be Set]
                                           Time:   [To be Set]
24                                         Place:  Courtroom 1639
25                                                 255 East Temple Street
                                                   Los Angeles, CA 90012
26

27

28

                              1
                          COMPLAINT
0071186.001/223814v1

EXHIBIT
1

David Schwimmer ("Plaintiff") hereby respectfully alleges and complains as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334(b) of the subject matter of this proceeding because the claims asserted herein arise under Title 11 of the United States Code and are related to a case pending under Title 11 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). That case is In re Aaron Tonken, Bk. Case No. LA 04-12883-EC (the "Tonken Case").

2.     This is a core proceeding under 28 U.S.C. § 157(b). Regardless of whether this is a core proceeding, consent is hereby given to the entry of final orders and judgment by the Bankruptcy Court. Each defendant is hereby notified that Fed.R.Bankr.P. 7008(a) requires each defendant to plead whether this proceeding is core or non-core and, if non-core, whether consent is given to the entry of final orders and judgment by the Bankruptcy Court. Notwithstanding the foregoing, Plaintiff alleges that this action is related to a state court slander action arising from the Debtor's post-petition conduct and Plaintiff reserves the right to seek relief from stay so that the allegations common to both the state and bankruptcy court matters can be consolidated and determined in the Superior Court for the State of California.

3.     Pursuant to 28 U.S.C. § 1409, venue is proper in the Central District of California, Los Angeles Division because the Tonken Case is pending in this district and division.

## GENERAL ALLEGATIONS

4.     Plaintiff realleges paragraphs 1 through 3, inclusive, above and incorporates the paragraphs by this reference as if fully set forth herein.

5.     On February 10, 2004, the Debtor commenced the present Chapter 7 case.

6.     Plaintiff has commenced this adversary proceeding to obtain a judgment against Defendant for Slander, for a determination that the debts owed by Tonken arising from the defamatory statements to David Schwimmer are non-dischargeable under 11 U.S.C. § 523(a)(6); and to object to Defendant's discharge in its entirety.

2
COMPLAINT

0071186.001/223814v1

The Nature of this Action

7.      This action arises out of defamatory statements about Plaintiff DAVID SCHWIMMER ("Schwimmer" or "Plaintiff") made willfully and maliciously and with the knowledge that they would damage Plaintiff, by Defendant AARON TONKEN ("Tonken" or "Defendant"), a convicted felon and self-professed con man and scam artist. Profiteering on his admitted criminal past, Defendant vindictively peddled lies about Schwimmer for his own financial gain and out of spite, including lies about Schwimmer which Defendant told to the media, such as including those published in the Los Angeles Times Newspaper on December 8 and 10, 2003 (the "Times Articles"). In false and defamatory statements made orally to third parties, Defendant falsely asserted that Schwimmer had threatened to pull out of a charity event unless he was given a pair of expensive Rolex watches, that Defendant had documentation in the form of invoices to corroborate that he had in fact purchased a pair of Rolex watches for Schwimmer at a cost of over $26,000, and that Defendant gave the Rolex watches to Schwimmer as a quid pro quo demanded by Schwimmer for his appearance at the charity event because Schwimmer refused to be charitable unless he received this personal benefit (the "Statements"). However, Defendant is a scheming pathological liar, bent on castigating and damaging Schwimmer and other celebrities by concocting bogus stories such as this in an effort to justify Defendant's own deceit and lies, such as Defendant's despicable conduct that resulted in his conviction for mail and wire fraud for bilking charities and their donors. Schwimmer alleges on information and belief that Defendant diverted monies intended for cancer charities and other laudable causes, and connived to rationalize his misconduct by blaming it on the demands of celebrities such as Schwimmer and, toward that end, Defendant fabricated the Statements about Schwimmer.

8.      The Statements about Schwimmer were outrageous lies fabricated by Defendant and known by him to be false, since among other things, Schwimmer never demanded nor received any Rolex watches in exchange for appearing at a charity event, nor did he ever receive any Rolex watches from Defendant for any purpose. These Statements made by Defendant are clearly intended to paint Schwimmer as a cold-hearted opportunist who demanded a pricey quid pro quo for appearing at a charity event, thereby deflecting attention from Defendant who has pled guilty to federal fraud charges and faces additional charges for diverting funds from various charities for his own personal use. These

0071186.001/223814v1

1   Statements constitute malicious falsehoods and as Defendant knew when he made them, were

2   calculated to and did greatly damage Schwimmer.

3        9.    Pre-bankruptcy, the Defendant incurred enormous debts and liabilities while at the same

4   time developing the story of his history and experience as a 'con artist', which story is embodied in his

5   soon to be published book entitled "The King of Cons". Defendant developed this story and then filed

6   bankruptcy just before signing a huge book deal which has already brought him a reported $1 million in

7   pre-sales. The concealment of this asset from Defendant's creditors comprises a fraud on creditors and

8   grounds to deny Defendant his discharge. Additionally, during the Defendant's bankruptcy, Defendant

9   has, among other things, violated a Court order, and Plaintiff is informed and believes that Defendant lied

10  on his schedules,[1] comprising further grounds to deny his discharge.

11  **The Parties to the Dispute**

12       10.    Plaintiff DAVID SCHWIMMER is, and at all times relevant hereto has been a citizen of

13  the State of California.  He is an accomplished Actor, Producer and Director, most notably in his role as

14  Ross Geller on the popular NBC television show "Friends." As a result of his hard work and use of his

15  talent in the field of entertainment, and his involvement in various charitable organizations, Schwimmer

16  has enjoyed a positive reputation that has been tarnished by Defendant's dissemination of the

17  Statements.

18       11.    Schwimmer is informed and believes that Defendant is, and at all times relevant hereto

19  has been a citizen of the State of California, and that Defendant is a self-confessed "scam artist" who

20  specialized in Hollywood and celebrity fundraising events and mingled and socialized with numerous

21  Hollywood celebrities prior to being indicted on fraud charges, and admitting that the money given to him

22  by donors and underwriters was diverted to shell bank accounts rather than paid to the charities to which

23  

24  [1] Schwimmer properly noticed Defendant's 2004 examination. As stated in more detail below, Defendant did not produce

25  documents and failed to answer questions at the 2004 examination. The 2004 examination of Defendant has not yet been

26  concluded and Schwimmer is seeking to force the Defendant to produce documents and testify at his 2004 examination

27  Schwimmer is informed and believes that the Defendant may have lied on his schedules  Schwimmer will seek leave to

28  amend this Complaint as soon as Schwimmer is able to further question Debtor about his schedules

Case 3:04-mp-00001    Doc 1    Filed 12/30/04.  Entered 12/30/04 15:53:24    Desc Main
Document     Page 34 of 48

1   they were intended. Schwimmer is informed and believes that Defendant pled guilty to the federal

2   charges that he defrauded donors and underwriters of the Hollywood charity events he organized, and

3   has been sentenced to over five years in Federal prison. Schwimmer further alleges on information and

4   belief that the California Attorney General has also filed suit against Defendant arising from Defendant's

5   despicable schemes to swindle charities.

6         12.   Schwimmer is ignorant of the true names and capacities of Defendants sued herein as

7   Does 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names. Schwimmer

8   will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants

9   when the same have been ascertained. Schwimmer is informed and believes and based thereon alleges

10   that each of the fictitiously named Defendants is responsible in some manner for the occurrences, acts

11   and omissions alleged herein and that Schwimmer's damages were proximately caused by their conduct.

12   For convenience, each reference to a named defendant herein shall refer to the Doe Defendants and

13   each of them.

14         13.   Schwimmer is informed and believes and based thereon alleges that at all material

15   times Defendants, and each of them, were the agents, employees, partners, joint venturers, co-

16   conspirators, owners, principals, and employers of the remaining Defendants, and each of them, and

17   are, and at all times herein mentioned were, acting within the course and scope of that agency,

18   employment, partnership, conspiracy, ownership and/or joint venture. Schwimmer is further informed

19   and believes and based thereon alleges that the acts and conduct alleged herein were known to, and

20   authorized and/or ratified by, the officers, directors, and managing agents of the Defendants, and each of

21   them. Schwimmer is informed and believes and based thereon alleges that the officers, directors and/or

22   managing agents of Defendants, and each of them, authorized, directed and/or ratified the wrongful acts

23   of Defendants and are consequently liable to Schwimmer.

24         14.   Defendant is the debtor in a Chapter 7 proceeding pending before the U.S. Bankruptcy

25   Court, Central District of California, as Case No. 04-12883 EC.

26         15.   Schwimmer is a creditor of Defendant.

27

28

5<br>COMPLAINT

0071186.001/223814v1

## Defendants' False Statements

16.    As alleged herein, Schwimmer alleges on information and belief that Defendant orally made the Statements to third parties, including without limitation reporters with the Los Angeles Times, willfully and maliciously, and knowing and intending that the Statements would be published and disseminated in the media, which articles were in fact published in the Los Angeles Times on December 8 and 10, 2003 and that Defendant's Statements, which were false, fabricated and defamatory, offensively depicted Schwimmer as personally profiting to the detriment of charitable organizations. Schwimmer further alleges on information and belief that among other false and defamatory Statements by Defendant about Schwimmer, Defendant claimed that he had an invoice that showed that he had purchased and given to Schwimmer two Rolex watches worth over $26,000 purchased from XIV Karats Ltd. in Beverly Hills ("XIV Karats"), which Defendant falsely claimed were demanded by Schwimmer as a quid pro quo for appearing at a charity event. The Statements are slanderous on their face since they maliciously and recklessly portray Schwimmer as a cold-hearted opportunist stealing from charities for his own personal gain, when, in fact, Defendant knew that Schwimmer never requested, nor did he receive any compensation for that charity event appearance.

17.    Schwimmer is informed and believes and therefore alleges that Defendant maliciously, willfully, without justification, and without privilege, made the Statements for the purpose of publication in, among other publications, the LA Times articles, in order to garner attention for a "tell-all" book, for which Defendant has recently boasted he has secured a million dollars in pre-sales.

18.    Schwimmer is informed and believes and on that basis alleges that Defendant made the Statements to damage Schwimmer's reputation and standing in the community and entertainment industry, to damage Schwimmer's name, likeness and goodwill, and to cause shame, mortification, hurt feelings, embarrassment and humiliation.

19.    Schwimmer alleges on information and belief that Defendant intentionally portrayed Schwimmer in this untrue manner knowing that the depiction was false, or without any reasonable grounds for believing it to be true, because Defendant had, in fact, purchased the watches for himself and his alleged business partner, Bruce Catanese. Schwimmer further alleges on information and belief that Defendant knew that there was no invoice that would corroborate his Statements, and that

6
COMPLAINT

0071186.001/223814v1

1  Defendant subsequently testified under oath that no such invoice corroborating the defamatory

2  Statements exists.

3      20.    Thus, Schwimmer alleges on information and belief that Defendant knew that the

4  Statements were false. Schwimmer further alleges on information and belief that notwithstanding

5  Defendant's knowledge that the Statements were false, he repeated them to third parties knowing and

6  intending that they would be further published and disseminated and would damage Plaintiff.

7  Schwimmer alleges on information and belief that in making the Statements Defendant acted with

8  malice.

9      21.    Schwimmer believes the Defendant engaged in willful and malicious activities to

10  purposely harm him insofar as Schwimmer had cooperated with the authorities who were investigating

11  the Defendant's criminal misconduct. As such, in retaliation of Schwimmer's actions, the Defendant

12  made the False Statements.

13  <u>Denial of Defendant's Discharge</u>

14      22.    On June 14, 2004, Schwimmer was successful in securing an order granting the 2004

15  examination of Defendant. <u>See</u> Exhibit "1." The 2004 Order also ordered the Defendant to produce

16  documents. The Defendant did <u>not</u> oppose the 2004 Motion or Order; further, the Defendant never

17  moved for a protective order.

18      23.    Defendant failed to comply with the court order to produce documents and failed to

19  respond to the document production request. Further, Defendant and his counsel attended the 2004

20  examination; however, at that time Defendant improperly invoked the Defendant's right against self-

21  incrimination.

22      24.    Schwimmer has filed a Motion to Compel to force the Defendant to answer questions

23  and to produce documents.

24      25.    Defendant, however, did testify at his 2004 examination, that he was going to be

25  receiving advances from the publisher of Defendant's book entitled from his book entitled *King Of Cons:*

26  *Exposing the Dirty, Rotten Secrets of the Washington Elite and Hollywood Celebrities.* He also

27  represented through counsel that he was expecting to receive charity over $1 Million in income from pre-

28  sales of the book.

7<br>COMPLAINT

0071186.001/223814v1

26. Schwimmer is informed and believes that the Defendant's bankruptcy was orchestrated in a manner that Defendant would receive advances from his book immediately after the filing of his bankruptcy. Plaintiff is informed and believes, and thereon alleges, that such conduct by the Defendant was concocted to deprive the Defendant's estate of valuable assets, in particular, the value to be derived from the story of Defendant's pre-petition activities as a 'con artist'. This story was developed and existed pre-petition and, as such, is an estate asset, which should have been disclosed, and the value of which should be realized for the benefit of the Debtor's creditors. Defendant purposely concealed his work of authorship of his book and alleged finality of his book until after he filed for bankruptcy.

27. Schwimmer is informed that the Defendant has withheld crucial documents from the Chapter 7 Trustee in his bankruptcy proceeding.

### FIRST CLAIM FOR RELIEF

### [For Slander against Defendant Tonken]

28. Schwimmer repeats, realleges and incorporates by reference Paragraphs 1 through 27, inclusive, of this Complaint as if fully set forth herein.

29. Schwimmer is informed and believes and thereon alleges that Defendant orally made to third parties the Statements including, but not limited to, Defendant's allegation that he had an invoice to prove that Schwimmer received Rolex watches in exchange for appearing at a charity event. Schwimmer alleges on information and belief that Defendant intentionally portrayed Schwimmer in this untrue manner knowing that the depiction was false, or without any reasonable grounds for believing it to be true. Schwimmer alleges on information and belief that Defendant knew the Statements were untrue because, among other reasons, Defendant knew that he had purchased the Rolex watches for himself and his alleged business partner, Bruce Catanese, and that he had charged the watches to Catanese's credit card.

30. Schwimmer further alleges on information and belief that the Statements by Defendant were susceptible to a defamatory meaning on their face in that they have a direct tendency to injure Schwimmer with respect to his personal and professional reputation, character and business, and that

8
COMPLAINT

0071186.001/223814v1

1  they were made with actual malice, with the knowledge that they were false, or with a reckless disregard

2  for the truth.

3      31.    Schwimmer further alleges on information and belief that the Statements by Defendant

4  were unprivileged, and that he knew, or recklessly disregarded the fact that, the aforementioned false

5  statements were likely to damage the reputation and standing of Schwimmer and cause damage to his

6  standing in the entertainment industry.

7      32.    As a proximate result of the above-described conduct by Defendant, Schwimmer has

8  suffered general and special damages in an amount not presently known to Schwimmer but believed to

9  be not less than Two Million Dollars ($2,000,000) including damage to Schwimmer's reputation and

10 standing in the community as a result of the manner or context in which Defendant has exploited his

11 name, photograph and likeness, in addition to shame, mortification, hurt feelings, embarrassment,

12 humiliation, damage to the value of Schwimmer's name, likeness and goodwill. Although the full nature,

13 extent and amount of these damages are currently unknown, this Complaint will be amended at or before

14 trial to insert such information if such amendment is deemed necessary by the Court.

15     33.    Schwimmer is informed and believes and based thereon alleges that the aforesaid acts

16 of Defendant was done intentionally or with a conscious disregard of Schwimmer's rights, and with an

17 intent to vex, injure or annoy Schwimmer, such as to constitute oppression, fraud or malice thus entitling

18 Schwimmer to exemplary and punitive damages in an amount appropriate to punish or set an example of

19 Defendant and to deter such conduct in the future, which amount will be proved at trial.

20

21                              **SECOND CLAIM FOR RELIEF**

22      [Nondischargeability of Debt Based on Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)]

23     34.    Schwimmer realleges paragraphs 1 through 33, inclusive, above and incorporates by

24 this reference as if fully set forth herein.

25     35.    Schwimmer alleges that Defendant's conduct was willful, malicious, fraudulent, and

26 oppressive and intended to defraud and injure Schwimmer. Schwimmer alleges that Defendant provided

27 defamatory information regarding various Hollywood celebrities, including Schwimmer to reporters of

28

0071186.001/223814v1

1    certain newspapers and magazine which resulted in the publication of articles in, among others, the Los

2    Angeles.Times.

3        36.    Schwimmer believes the Defendant engaged in willful and malicious activities to

4    purposely harm him insofar as Schwimmer had cooperated with the authorities who were investigating

5    the Defendant's criminal misconduct. As such, in retaliation of Schwimmer's actions, the Defendant

6    made the false Statements to, among others, the L.A. Times which were ultimately published.

7        37.    Defendant's willful actions were without just cause or excuse and were intended to injure

8    Schwimmer. Defendant acted in callous disregard of the rights of Schwimmer. In doing the acts alleged

9    in this claim for relief, Schwimmer engaged in fraudulent, oppressive, and malicious conduct, and

10   Schwimmer is therefore entitled to an award of punitive damages in an amount to be decided at the time

11   of trial.

12       38.    As a result of the acts of Defendant, Defendant has willfully and maliciously injured

13   Schwimmer within the meaning of 11 U.S.C. § 523(a)(6).

14       39.    To the extent that the indebtedness due and owing by Defendant to Schwimmer based

15   on the willful and malicious injury caused by Defendant as described herein comprises a pre-petition

16   claim, it is non-dischargeable pursuant to Bankruptcy Code §523(a)(6).[2]

17

18                        **THIRD CLAIM FOR RELIEF**

19                   **[Objection to Discharge - 11 U.S.C. § 727(a)(4)(D)]**

20       40.    Schwimmer incorporates herein by reference the allegations of paragraphs 1 through 39

21   above as though set forth in full herein.

22       41.    The Defendant knowingly and fraudulently, in or in connection with his bankruptcy case

23   withheld from an officer of the estate entitled to possession under this title, recorded information,

24   including books, documents, records, and papers, relating to the Debtor's property and financial affairs in

25   violation of 11 U.S.C. § 727(a)(4)(D) ("Withheld Recorded Information").

26   _____

27   [2] To the extent that such injury compromises a post-petition claim, it is not included in this bankruptcy and no finding under 11

28   U.S.C. 523(a)(6) is required.

                                    10
                               **COMPLAINT**
0071186.001/223814v1

1    42.    Defendant has failed to turnover required and promised documents to the Trustee.

2

3                    **FOURTH CLAIM FOR RELIEF**

4                [Objection to Discharge - 11 U.S.C. § 727(a)(6)(A)]

5    43.    Schwimmer incorporates herein by reference the allegations of paragraphs 1 through 42

6    above as though set forth in full herein.

7    44.    On June 14, 2004 Schwimmer obtained an order for a 2004 examination of the Debtor.

8    Attached hereto as Exhibit "1" is a copy of the 2004 order

9    45.    The Defendant has refused, in his bankruptcy case to obey a lawful order of the Court,

10   other than an order to respond to a material question to testify, in particular, this Court's 2004 order.

11   46.    The Defendant knowingly and willfully violated the Court's June 14, 2004 order ordering

12   the Defendant to turnover documents in conjunction with his 2004 examination.

13   47.    The Defendant's violation of the Court's June 14, 2004 order violates 11 U.S.C. §

14   727(a)(6)(A).

15

16                    **FIFTH CLAIM FOR RELIEF**

17                [Objection to Discharge - 11 U.S.C. § 727(a)(2)]

18

19   48.    Schwimmer incorporates herein by reference the allegations of paragraphs 1 through 47

      above as though set forth in full herein.

20

21   49.    The Defendant, with the intent to hinder, delay, or defraud the creditors of the estate,

22   has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred,

23   removed, destroyed, mutilated, or concealed property of the Defendant within one year before the

24   Petition Date or property of the estate after the Petition Date, including but not limited to the Debtor's

25   story, work of authorship, actual interest and advances received from his book entitled *King Of Cons:*

26   *Exposing the Dirty, Rotten Secrets of the Washington Elite and Hollywood Celebrities.*

27   50.    The Defendant should be denied his discharge under 11 U.S.C. § 727(a)(2) because the

28   Debtor within one year prior to the filing of his Petition and after the Petition Date concealed the book

                                    11
                              COMPLAINT

0071186.001/223814v1

1   and its value, and/or deferred receiving advances on his book until after his bankruptcy was filed to keep

2   such monies from his pre-petition creditors.

3

4                                      **SIXTH CLAIM FOR RELIEF**

5                          [Objection to Discharge - 11 U.S.C. § 727(a)(4)(A)]

6       51.   Schwimmer incorporates herein by reference the allegations of paragraphs 1 through 50

7   above as though set forth in full herein.

8       52.   The Defendant knowingly and fraudulently, in or in connection with his bankruptcy made

9   false oaths or accounts in violation of 11 U.S.C. § 727(a)(4)(A) ("False Oaths").

10      53.   The Defendant's False Oaths include, inter alia, the Defendant's concealment of assets

11  from his Schedules.

12      54.   Defendant purposely concealed his pre-petition work of authorship of his book entitled

13  *King Of Cons: Exposing the Dirty, Rotten Secrets of the Washington Elite and Hollywood Celebrities.*

14      55.   The Defendant has knowingly and intentionally concealed and/or deferred the proceeds

15  he has received from his book entitled *King Of Cons: Exposing the Dirty, Rotten Secrets of the*

16  *Washington Elite and Hollywood Celebrities* until after the Defendant filed for bankruptcy to keep such

17  monies from his pre-petition creditors.

18      56.   The Defendant's False Oaths violate 11 U.S.C. § 727(a)(4)(A).

19

20                                      **PRAYERS FOR RELIEF**

21      WHEREFORE, Schwimmer prays for the Judgment as follows:

22      A)    A judgment declaring that the indebtedness due and owing from Defendant to

23  Schwimmer in connection with the allegations set forth above, in an amount to be determined at trial that

24  the Schwimmer believes is at least $2,000,000, plus punitive damages, interest, attorneys' fees and

25  costs as allowable by law;

26      B)    To the extent that the indebtedness owing to Plaintiff constitutes a pre-petition claim, be

27  deemed nondischargeable pursuant to Bankruptcy Code §523 (a)(6);

28      C)    That the discharge of the Defendant be denied;

                                            12
                                        COMPLAINT

D)     Prejudgment and postjudgment interest on Defendant's indebtedness to Schwimmer as

provided by law and for attorneys' fees and costs of suit herein; and

E)     For such other and further relief as the court deems just and proper.

Dated: September 14, 2004          LINER YANKELEVITZ
                                   SUNSHINE & REGENSTREIF LLP

                                              &

                                   LAVELY & SINGER

                               By: _____
                                       Leslie A. Cohen
                                       Sam A. Kozhaya
                                              &
                                       Martin D. Singer
                                       Attorneys for Plaintiff,
                                       David Schwimmer

13
COMPLAINT



Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3603
Telephone: 310-500-3500 – Facsimile: 310-500-3501
www.linerlaw.com
Los Angeles | San Francisco

Sam A. Kozhaya
skozhaya@linerlaw.com
Direct Dial: (310) 500-3615

December 20, 2004

**VIA HAND DELIVERY AND U.S. MAIL**

Custodian of Records
Thomas Nelson, Inc.
50 Nelson Place
Nashville, Tennessee 37214-1000

Re:     Subpoena in Tonken v. Schwimmer, Adv. No. 04-02488

Dear Custodian of Records:

Enclosed please find a deposition subpoena requiring your attendance at a deposition on January 10, 2005, as well as the production of responsive documents on that date. In an attempt to make this process as expeditious and convenient as possible, I am prepared to forego the taking of testimony if you will agree to an alternative method, whereby you produce the records described in Attachment 1 to the subpoena and complete and execute the accompanying declaration enclosed herein, under the following terms:  by placing true and correct copies of the subpoenaed records in an envelope, enclosing your original executed declaration, sealing them and sending the records directly to me at the above address such that I have the documents in my possession on or before January 6, 2005.  If I am able to determine that your compliance is sufficient to render the deposition unnecessary, I will dispense with the deposition.

Please let me know as early as possible whether you would prefer to proceed under this alternative method.  If you have any questions or comments regarding the subpoena, please do not hesitate to contact me.

Very truly yours,

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP

By

Sam A. Kozhaya

Enclosure
cc:     Leslie A. Cohen, Esq.
        Martin D. Singer, Esq.

0071166001/Z95136v01

**EXHIBIT**

**2**

**GERALDINE MARY KATHLEEN KIBBLER and REX LEIGH HENRY KIBBLER, Plaintiffs/Appellants, v. RICHARDS MEDICAL COMPANY, Defendant/Appellee.**

No. 02A01-9110-CV-00214

**COURT OF APPEALS OF TENNESSEE, WESTERN SECTION, AT JACKSON**

*1992 Tenn. App. LEXIS 787; CCH Prod. Liab. Rep. P13,472*

**September 23, 1992, Filed**

**SUBSEQUENT HISTORY:** As Corrected October 19, 1992.

**PRIOR HISTORY:** [*1]

Law Court, Shelby County, Hon. George H. Brown, Jr., Judge

**DISPOSITION:**

AFFIRMED.

**LexisNexis(R) Headnotes**

**COUNSEL:**

WILLIAM H. LUCK, Memphis, Attorney for Plaintiffs.

CARL H. LANGSCHMIDT, JR., TABITHA K. FRANCISCO and SANDRA SAWYER, Attorneys for Defendant.

**JUDGES:** TOMLIN, CRAWFORD, HIGHERS

**OPINIONBY:** TOMLIN

**OPINION: TOMLIN, P.J., W.S.**

Geraldine M. K. Kibbler and her husband, Rex L. H. Kibbler ("plaintiffs" or "plaintiff") n1 filed suit in the Circuit Court of Shelby County against Richards Medical Company ("defendant") for compensatory damages. The alleged damages were due to injuries sustained by plaintiff arising from the fracturing of a knee implant marker wire in one of her knees. In her complaint, plaintiff grounded her claim in common-law negligence, or strict liability, and breach of express and implied warranties under the Uniform Commercial Code. On appeal plaintiff has abandoned her UCC claims.

n1 Inasmuch as Mr. Kibbler's cause of action is a derivative one from his wife, we will refer to the plaintiffs in the singular at times, to refer to Mrs. Kibbler.

Plaintiff subsequently [*2] amended her complaint to seek punitive damages. The case was tried by a jury. At the conclusion of plaintiff's proof, the trial court on his own motion directed a verdict in favor of defendant as to plaintiff's punitive damage claim. Defendant's motion for a directed verdict as to all remaining claims was granted as well.

On appeal, plaintiff has raised six issues which are as follows: Did the trial court err in: (1) granting a directed verdict for defendant as to both punitive damages and all other claims; (2) not admitting into evidence certain testimony of plaintiff's physician, Mr. Edibam; (3) not admitting into evidence certain testimony of Dr. James Tabor, defendant's physician; (4) requiring plaintiff to travel to Memphis from Australia to give a discovery deposition and to take a physical examination; (5) granting defendant a continuance after allowing plaintiff's amended complaint seeking punitive damages; and (6) failing to require defendant to furnish financial data in connection with plaintiff's punitive damage claim? We resolve these issues in favor of defendant and affirm.

Page 2

1992 Tenn. App. LEXIS 787, *; CCH Prod. Liab. Rep. P13,472

The material facts are virtually undisputed. Mrs. Kibbler and her husband are long-time residents [*3] of Perth, western Australia. In 1973, plaintiff began suffering from osteoarthritis and was treated by a rheumatologist. He later referred her to an orthopedic surgeon in west Perth who decided to insert implants in both of plaintiff's knees. The surgeon performed this operation, using implants manufactured by defendant, in April, 1984. Plaintiff's recovery was good and she was pleased with the results.

The prosthetic implant that was used consisted of two plastic components -- the femoral component and the tibial component. The tibial component had a stainless steel marker wire looped around a groove on the prosthesis. The wire was twisted some five times and then laid flat against the component. This twisting was done as part of the defendant's manufacturing process. The only purpose served by the marker wire was to aid in the component's identification by x-ray, as the component itself did not appear on x-ray.

In March, 1986, plaintiff experienced sharp pain in her left knee. She visited her orthopedic surgeon, who, after conducting some tests and x-rays advised her that the marker wire had fractured into two pieces. Her surgeon performed an operation later that month to remove [*4] the wire pieces and to check the prosthesis. While he removed the larger piece of broken wire, he was unable to remove a smaller piece imbedded in soft tissue behind the component. Also finding that the tibial component had loosened, the surgeon found it necessary to remove the first component and insert another prosthesis, also manufactured by defendant.

Following the second operation, plaintiff experienced no problems with her left knee, although later x-rays revealed that the marker wire on the second prosthesis had also fractured. Unlike the first one, however, it remained in place and has caused no trouble.

## I. THE DIRECTED VERDICT ISSUE

In considering a case on appeal, where the trial court has directed a verdict for one of the parties, the rules require this court, like the trial judge, to take the strongest legitimate view of the evidence in favor of the opponent of the motion, to allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during or after trial except where a reasonable mind could draw [*5] but one conclusion. *Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn. 1977).*

In the case at bar, plaintiff is proceeding upon two theories -- common-law negligence and strict liability

imposed upon a manufacturer. As to the latter theory, the applicable statutory law is found in *T.C.A. § 29-28-105,* which reads in pertinent part as follows:

**29-28-105. Determination of defective or dangerous condition.** -- (a) A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

(b) In making this determination the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

Under the negligence theory, plaintiff has the additional burden of proving [*6] that the defective condition of the product was the result of negligence in the manufacturing process or that the manufacturer knew or should have known of the defective condition. *Browder v. Pettigrew, 541 S.W.2d 402, 404 (Tenn. 1976).*

If the fact in issue is one within the common knowledge of experts only (as is the case before us), and not within the common knowledge of a layman, it is necessary for plaintiff to introduce expert testimony in order to make out a prima facie case. M. Stuart Madden, Products Liability 532 (2d ed. 1988). Whether based on negligence or strict liability, the plaintiff must show that the product is unsafe in order for the claim to be actionable. *Reece v. Lowe's of Boone, Inc., 754 S.W.2d 67 (Tenn. App. 1988).* In this state this means that the product must be shown to be either defective or unreasonably dangerous. *Smith v. Detroit Marine Eng. Corp., 712 S.W.2d 472 (Tenn. App. 1985).*

The term "defective condition" is defined as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." *T.C.A. § 29-28-102(2).* [*7] Subsection 8 of the same section defines "unreasonably dangerous" as:

[A] product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

However, as noted in *Tatum v. Cordis Corp., 758 F. Supp. 457, 461 (D. Tenn. 1991),* "It is not enough to

Page 3

1992 Tenn. App. LEXIS 787, *; CCH Prod. Liab. Rep. P13,472

show that the product caused the plaintiff's injury or was involved in it. The plaintiff must show that there was something wrong with the product."

This duty placed upon a manufacturer has been aptly described by this court in *Kerley v. Stanley Works, 553 S.W.2d 80 (Tenn. App. 1977)*, quoting with approval 72 C.J.S. Supp. Products Liability, Section 21, where it was stated:

"A manufacturer, . . . is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, [*8] nor is it necessary to incorporate the ultimate safety features in the product. Hence, a departure from the required standard of care is not demonstrated where it is simply shown that there was a better, safer, or different design which would have averted the injury."

The proof in this record, viewed in a light most favorable to plaintiff, does not dictate a reversal of the trial court on this issue. Plaintiff relies on the testimony of the expert witness Dahlberg, a metallurgist. He stated that the fracture of the marker wire was caused by stress corrosion cracking the outer surface or film of the wire. This stress was placed upon the wire by the twisting of the ends of the wire in its installation on the implant component. At no point, however, did Dahlberg or anyone else testify that the prosthesis with the marker wire in place was either defective or unreasonably dangerous. In light of the absence of expert testimony that the product was either defective or unreasonably dangerous, the trial court properly directed a verdict for defendant.

## II. THE EXCLUDED EVIDENCE

Upon motion of counsel for defendant, a portion of the depositions of Mr. Edibam, plaintiff's Australian [*9] orthopedic surgeon, and Dr. James Tabor, defendant's witness, were excluded by the trial court.

As for the witness Edibam, the question and the answer that contained the objectionable portion reads as follows:

Q. Of those [referring to the installation of over a hundred knee prostheses] how many do you know of where the marker wire has fractured?

A. Initially, it was something that I noticed. I know of five or six patients who I have seen recently where the marker wire fractured but ultimately I think all of them will fracture and they will stay in place because of creep. (This portion excluded by trial court.)

As for Dr. Tabor's testimony, the question and the excluded answer are as follows:

Q. All right, sir. Now if it does develop that from experts in the other field that that wire is almost certainly going to fail if implanted in the human being, would that change your comment about the suitability of putting that device in a patient?

A. Well, I would think that if there was a device in which there was a warning that this device was going to fail, I don't think anybody would be putting that in if they felt that that was a bona fide and correct warning.

The court [*10] permitted the witness Edibam to testify that in well over a hundred prostheses installed by him he had seen some five or six where the marker wire had fractured. However, the court excluded his opinion to the effect that he "thought" that ultimately all (of the hundred or so) would eventually fracture. This opinion is pure conjecture and speculation on his part, as well as being outside the scope of his expertise. Furthermore, this evidence cannot be relied upon by the court in determining whether the plaintiff's prosthesis itself was either defective or unreasonably dangerous.

As for Dr. Tabor's testimony, the answer objected to was not relevant to the issue at hand concerning the specific design of the Kibbler prosthesis. In our opinion, the trial court did not abuse its discretion in excluding this evidence. Nevertheless, if it was error, it was harmless error.

## III. PLAINTIFF'S REQUIRED TRIP TO MEMPHIS

Plaintiff contends that it was error for the trial court to require her to come to Memphis, for a discovery deposition and to take a physical examination at the request of the defendant. The course of pretrial discovery is, in large measure, left to the sound discretion [*11] of the trial court. *Vythoulkas v. Vanderbilt University Hospital, 693 S.W.2d 350 (Tenn. App. 1985)*.

Plaintiffs chose Shelby County as their forum, although they could have sued defendant in their home state in western Australia. While we have found no reported Tennessee decision on point, the federal courts have routinely held that it is proper to require a non-resident who chooses a forum for litigation to appear for a discovery deposition at the instance of the defendant in that forum, absent compelling circumstances. *Clem v. Allied Van Lines, 102 F.R.D. 938 (S.D.N.Y. 1984)*. Clem was decided pursuant to *F.R.C.P. 26*, which is similar to T.R.C.P. 26, dealing with protective orders. Federal decisions on rules of practice are influential in the interpretation of the rules of this state. See *Moredock v. McMurray, 527 S.W.2d 462 (Tenn. 1975)*. We find no

Page 4

abuse of discretion in this matter by the trial court. Accordingly, this issue is without merit.

Defendant arranged for an independent court-ordered medical examination of plaintiff while she was to be in Memphis for her discovery deposition. [*12] T.R.C.P. 35.01 provides in pertinent part as follows:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician . . .

The trial court granted defendant's motion after a full hearing. Under the circumstances, we find no abuse of discretion and this issue, as well, is without merit.

## IV. DEFENDANT'S FINANCIAL CONDITION

At some point prior to trial, plaintiffs filed a motion seeking to have the trial court compel defendant to produce certain financial documents, with exhibits, relating to its financial condition. This was done after the complaint was amended to seek punitive damages. We find no order in the technical record reflecting any action of the trial court on this motion. However, it appears from the positions taken by respective counsel that the court delayed ordering the discovery until plaintiff had justified a factual basis for requiring defendant to produce this data pursuant to T.R.C.P. 26.02. In *Breault*

*v. Friedli, 610 S.W.2d 134 (Tenn. App. 1980)*, [*13] the Middle Section of this Court held that if a plaintiff was unable to show through discovery that a factual basis for punitive damages existed, the trial court could prohibit discovery of the defendant's financial position under T.R.C.P. 26.03(1). The trial court acted properly, and did not abuse its discretion. This issue is without merit.

## V. THE GRANTING OF A CONTINUANCE

Lastly, plaintiffs set forth as an issue that following the granting of their motion to amend their complaint to seek punitive damages, the trial court granted defendant's motion for a continuance. Nowhere in their brief do they state why and how this was error, nor do they address this issue in the argument portion of their brief. Accordingly, we treat this issue as being waived. However, we would observe that the granting of a continuance is within the discretion of the trial court and there has been no showing of any abuse of discretion in this regard.

For the above-stated reasons, the judgment of the trial court is, in all respects, affirmed. Costs in this cause on appeal are taxed to plaintiffs, for which execution may issue if necessary.

TOMLIN, P.J., W.S.

CRAWFORD, J. (CONCURS)

HIGHERS, [*14] J. (CONCURS)